Carl R. GOSSETT and Bernadette Gossett, Appellants,

v.

Northrup P. LARSON, Sr. and Olive Larson, Husband and Wife, and Northrup P. Larson, Jr. and Chester Burrus, Administrator of the Estate of John Burrus, Deceased, Defendants,

and

M. F. A. Mutual Insurance Company, Respondent.

No. 54894.

Supreme Court of Missouri, Division No. 2.

Sept. 14, 1970.

---

James E. Woodfill, Nevada, Malcolm L. Robertson, Blanchard, Van Fleet & Robertson, Joplin, for appellants.

Duke W. Ponick, Jr., and Max W. Foust of Morris, Foust, Moudy & Beckett, Kansas City, for respondent-garnishee M.F.A. Insurance Co.

RICHARD C. JENSEN, Special Judge.

This is a garnishment proceeding wherein plaintiffs seek to recover from M. F. A. Mutual Insurance Company Twenty Thousand Dollars ($20,000.00) on judgments obtained by the plaintiffs against Northrup Larson, Jr. as the result of an automobile collision.

The trial judge rendered judgment in favor of the garnishee M. F. A. Mutual Insurance Company and from this judgment, the plaintiffs have appealed.

The cause was submitted to the Court upon a stipulation of facts and involved only an issue of law.

The stipulated facts are as follows:

At the time of the collision Northrup P. Larson, Jr. was driving a 1954 Ford automobile owned by his brother, James Larson. N. P. Larson, Sr. and his wife, Olive, parents of James and N. P. Larson, Jr. were riding in said automobile.

The 1954 Ford automobile was being used to transport all of the Larsons to the residence of a daughter of N. P. Larson, Sr. and Olive Larson.

On June 11, 1960, at the time of the collision, Carl R. Gossett, Bernadette Gossett and their minor son, Bryan Gossett, were riding as passengers in an automobile operated by John Burrus when it collided with the automobile operated by Northrup P. Larson, Jr.

The collision resulted in the death of Bryan Gossett and injured Carl and Bernadette Gossett.

Carl and Bernadette Gossett brought suit against Northrup P. Larson, Sr., Olive Larson, Northrup P. Larson, Jr. and Chester Burrus, administrator of the estate of John Burrus, deceased, to recover damages for the wrongful death of Bryan Gossett and the bodily injuries of Carl and Bernadette Gossett alleged to have been caused by the negligence of N. P. Larson, Jr. in the operation of the above-described 1954 Ford automobile which said negligence was allegedly imputed to N. P. Larson, Sr. and his wife, Olive, and the negligence of

John Burrus in the operation of a 1952 Chevrolet automobile.

On June 15, 1965, after a jury trial, the plaintiffs obtained the following judgments against N. P. Larson, Jr. only:

(A) Judgment for Carl R. Gossett and Bernadette Gossett in the amount of Ten Thousand Dollars ($10,000.00) for the wrongful death of Bryan Gossett.

(B) Judgment for Carl R. Gossett in the amount of Eighteen Thousand Dollars ($18,000.00) for his bodily injuries.

(C) Judgment for Bernadette Gossett in the amount of Two Thousand Dollars ($2,000.00) for her bodily injuries.

On June 11, 1960, at the time of the collision involved here, a policy of automobile liability insurance issued by garnishee M. F. A. Mutual Insurance Company to N. P. Larson, a/k/a N. P. Larson, Sr. with bodily injury liability limits of Ten Thousand Dollars ($10,000.00) for each person and Twenty Thousand Dollars ($20,000.00) for each accident was in full force and effect.

N. P. Larson, Sr. owned a 1958 Chevrolet automobile which was the "owned" automobile in the aforesaid policy of insurance.

At the time of the collision neither James Larson nor N. P. Larson, Jr. were members of the household of N. P. Larson, Sr.

At the time of the accident the 1954 Ford automobile operated by N. P. Larson, Jr. was not being used as a temporary substitute for the 1958 Chevrolet automobile described in the insurance policy issued by garnishee; nor was the Ford owned by nor furnished for regular use to N. P. Larson, Sr. or his spouse or any member of his household; nor was it being used in any business or occupation of N. P. Larson, Sr. or his wife; nor was it owned by N. P. Larson, Jr.; and N. P. Larson, Jr. was not hiring the 1954 Ford automobile.

Plaintiffs in this appeal do not contend that N. P. Larson, Jr. was acting as the agent, servant or employee of N. P. Larson, Sr., nor that there was joint control of the automobile, but urge that garnishee's liability to plaintiffs rests upon the wording of its policy of automobile liability insurance as it would appear to a policyholder and not upon a theory of imputed negligence.

The specific policy provisions under which the plaintiffs are seeking to recover in this garnishment proceedings are as follows:

"Insuring Agreement

I—Definitions.

Except where stated to the contrary, it is agreed:

(4) 'Non-owned automobile' means any automobile, other than (a) the owned automobile, (b) a substitute automobile, or (c) an automobile owned by or furnished for regular use to the named insured or spouse or a member of his household.

(6) 'Bodily injury' means bodily injury, sickness or disease and includes death resulting therefrom at any time.

II—Automobile Liability Insurance.

1. Coverage A—Bodily Injury Liability —MFA Mutual will pay for the insured all damages which the insured shall become legally obligated to pay because of bodily injury sustained by any person, caused by accident and arising out of the ownership, maintenance, or use, including loading and unloading, of the owned automobile, a substitute automobile or a non-owned automobile.

6. Definition of Insured—With respect to the insurance afforded under Coverages A and B, the unqualified word 'insured' includes the named insured, and if an individual, his spouse, and:

(a) With respect to the owned automobile or a substitute automobile, any

person or organization using it or legally responsible for its use, provided the actual use of the automobile is by the named insured or spouse, or with permission of either; and

(b) With respect to any non-owned automobile, any other person or organization, not owning or hiring it, but legally responsible for its actual use by the named insured or spouse.

8. Exclusions—Coverages. Coverages A and B do not apply to:

(h) A non-owned automobile while used (1) in the automobile business by the named insured or spouse or (2) in any other business or occupation of the named insured or spouse except a private passenger automobile operated or occupied by the named insured or spouse or operated on behalf of either by a servant;"

It is the plaintiff's position that under the facts as stipulated and presented here, N. P. Larson, Jr. was an insured under the policy issued to N. P. Larson, Sr. as set out under Section I(4) and Section II, Paragraph 6(b).

The plaintiffs urged that the trial court, in finding that garnishee was not liable to pay the judgment under the terms of the automobile insurance policy, erred, because at the time of the accident in question N. P. Larson, Jr. was an insured within the meaning of Section II, Paragraph 6(b) of said policy in that;

"A. N. P. Larson, Sr. and Olive Larson, Named Insured and Spouse in Policy No. 1–366594 Were Actually Using the 1954 Ford Coach Automobile Operated by N. P. Larson, Jr. Within the Meaning of Section II, Paragraph 6(b) of Said Policy of Insurance at the Time of the Collision.

B. N. P. Larson, Jr. Was Legally Responsible for the Actual Use of the 1954 Ford Coach Automobile by

the Named Insured and His Spouse at the Time of the Collision in Question As That Term Is Used in Section II, Paragraph 6(b) of Said Policy of Insurance."

In order to best approach the issues to be resolved, we should not consider the father and son relationship of the Larsons as it has no significance here. And, under the facts as stipulated, the parties should be placed in the position of total strangers to each other.

Plaintiffs have diligently pursued this appeal and have cited many cases in support of their position. However, a review of these cases reveals that none of those cited is in point.

With one exception, the cases relied upon by plaintiffs involve the use of an automobile owned by the named insured and which was the named vehicle in the policy of insurance.

The one exception involved the use of a motorboat which was also owned by the named insured, and the motorboat was the named instrumentality in the policy of insurance.

None of the cases cited by plaintiffs involves a nonowned automobile in which the named insured in a policy of insurance was riding and in which there was no imputable negligence whereby the named insured could be held liable.

■ The plaintiffs also urge that the terms of the insurance policy are ambiguous and, therefore, this Court in construing the policy should give it a liberal interpretation citing cases in support thereof.

This last argument of the plaintiffs is also not applicable here since the language of the policy is not ambiguous, but, to the contrary, is clear and completely free of ambiguity.

Respondent-Garnishee in support of its position has cited and relies upon the case

of Beasley v. Allstate Insurance Company, 246 S.C. 153, 142 S.E.2d 872 wherein the Supreme Court of South Carolina in denying a recovery, ruled on facts which had some similarity to the factual situation before us.

One Darrell Tolson was fatally injured while riding as a passenger in a vehicle owned by his father, L. G. Tolson and being operated at the time by Raymond Wilkes.

Plaintiff, Administrator of the estate of Darrell Tolson, recovered a judgment against Wilkes for the wrongful death of the said Darrell Tolson and thereafter instituted an action to recover from garnishee Allstate Insurance Company, alleging that the said Wilkes was "an insured" under a non-owners automobile liability policy issued by Allstate Insurance Company to the said Darrell Tolson.

The controverted clause in the insurance policy construed in Beasley, supra, is in substance similar to the clause in controversy here:

"With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes (a) such named insured and spouse and (b) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization."

The Court, in ruling in Beasley, held:

"Wilkes was no doubt 'legally responsible' for his conduct in the operation of the automobile, but such does not make him 'an insured.' He was 'an insured' only if he was 'legally responsible for the use thereof' by Tolson or his spouse."

Under the facts in this case and the clear provisions of the insurance policy in question, we must similarly hold that N. P. Larson, Jr. was "an insured" only if he was "legally responsible for the use thereof" by N. P. Larson, Sr. or his spouse.

Since many names and parties were involved here, the real question at issue can be simplified as follows:

A is riding in an automobile driven by B, not owned by either A or B, with no negligence imputable to A, and B has an accident for which he is "legally responsible." Then, would B be "an insured" under Clause II, Paragraph 6(b) of a policy issued to A on another automobile? The answer is "no." There is no liability on the part of A's liability insurance carrier in that factual situation.

The only conclusion that can be reached here is that N. P. Larson, Jr. was not an insured under the very clear and unambiguous language of the policy issued by garnishee M. F. A. Mutual Insurance Company.

The judgment is affirmed.

All of the Judges concur.